UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LONE WOLF DISTRIBUTORS, INC.<br><br>    Plaintiff,<br><br>    v.<br><br>BRAVOWARE, INC. and SOPCOM, INC.<br><br>    Defendants. | Case No. 2:15-cv-016-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it plaintiff Lone Wolf's motion for sanctions. The motion is fully briefed and at issue. For the reasons explained below, the Court will grant the motion.

## BACKGROUND

In its motion for sanctions, plaintiff Lone Wolf claims that defendants misrepresented that they had no connection with an entity named BravoTac. After Lone Wolf expended considerable time and effort to expose the falsity of these representations, defendants withdrew them. In this motion for sanctions, Lone Wolf seeks reimbursement for its efforts in uncovering the truth regarding defendants' connection to BravoTac.

**Memorandum Decision & Order – page 1**

Plaintiff Lone Wolf is an Idaho corporation. It makes aftermarket firearm accessories, including a thread cap protector that fits on the end of a gun barrel to protect the barrel's threads from damage during transport or storage.

Lone Wolf claims that the two defendants – Bravoware Inc. and Sopcom, Inc., both owned by Gino Shemesh – sold counterfeit Lone Wolf thread cap protectors over the internet through an alter ego named BravoTac. Lone Wolf accuses the defendants of trademark counterfeiting and unfair competition, among other claims.

In its original complaint, Lone Wolf did not name either BravoTac or Gino Shemesh as defendants. Instead, Lone Wolf claimed that BravoTac is conducting business as an alter-ego of the two named defendants, Bravoware Inc. and Sopcom Inc.

Lone Wolf's complaint alleged that Shemesh established a relationship with it, an Idaho company, to become an authorized dealer of Lone Wolf products, and then conducted sales of counterfeit products on eBay under the pseudonym "BravoTac," which was in turn an alter-ego of the two named defendants owned by Shemesh. The complaint alleged that the BravoTac website (1) falsely advertised 9mm thread protectors as Lone Wolf products; and (2) advertised that Lone Wolf parts were made in South Korea and that its barrels were not stainless steel, both of which were false. *See Complaint (Dkt. No. 1) at ¶¶ 16, 17 & 18.*

Defendants responded on April 3, 2015, by filing a motion to dismiss alleging that this Court lacked personal jurisdiction over the two named defendants. Defendants argued that the two named defendants had no contacts with Idaho, and that any actions of

**Memorandum Decision & Order – page 2**

BravoTac could not be attributed to them.  Their brief alleged that "[n]either defendant operates a website.  The website complained of by plaintiffs is not owned by either defendant."  *See Defense Brief (Dkt. No. 17-1)* at p. 4.  The brief was supported by a Declaration of Shemesh wherein he states that "[n]either Sopcom nor Bravoware owns the web site www.bravotac.com mentioned in the complaint."  *See Shemesh Declaration (Dkt. No. 17-2)* at ¶ 9.  Shemesh also states that "[n]either Sopcom nor Bravoware was involved in any of the activities described in the Complaint."  *Id.* at ¶ 8.

Lone Wolf responded by filing a motion seeking to do discovery on the relationship between BravoTac and the defendants.  On April 27, 2015, the defendants opposed that motion, and in their brief argued that discovery "would be futile because [Lone Wolf] could never prove that BravoTac is the 'alter ego' of either Defendant."  *See Defense Brief (Dkt. No. 18)* at p. 5.  Defendants filed another Declaration from Shemesh stating that Sopcom and Bravoware had "no subsidiaries or divisions."  *See Shemesh Second Declaration (Dkt. No. 18-1)* at ¶¶ 3-4.  Defendants argued in their brief that Shemesh's statement "establishes that BravoTac cannot be an alter ego of either company because neither has any subsidiaries."  *See Defense Brief (Dkt. No. 18)* at p. 5.

The attorney for the defendants, Paul Reidl, states that he prepared these Declarations after consulting with Shemesh.  *See Reidl Affidavit (Dkt. No. 42-1).*  Reidl discussed the relationship between Bravoware, Sopcom, and BravoTac with Shemesh "in multiple telephone conversations and e-mails," and reviewed the Declarations "paragraph by paragraph with Shemesh over the telephone."  *Id.* at ¶ 6.  Reidl states that Shemesh

**Memorandum Decision & Order – page 3**

told him that Sopcom and Bravoware had nothing to do with BravoTac, and that BravoTac was Shemesh's personal eBay seller name. *Id.* at ¶ 5.

Reidl conducted his own investigation into whether there was a connection between BravoTac and the two named defendants. *Id.* He explains that he was aware of the BravoTac website but could find no connection between it and the two named defendants in his investigation. *Id.* He discovered the BravoTac d/b/a, but was told by Shemesh that "it was a d/b/a for his eBay business and that he had used it before Bravoware had been formed." *Id.* at ¶ 7. When Reidl searched for the d/b/a, he saw that it was registered July 23, 2013, a date after Sopcom had been dissolved and before Bravoware had been formed. *Id.* at ¶ 8. This chronology, Reidl explains, confirmed to him the truth of what Shemesh had told him:

> Because the purpose of a d/b/a is to publicly identify the person or entity who is doing business under that name, the filer could not have been Sopcom (which had been dissolved) or Bravoware (which had not yet been incorporated). It had to have been Mr. Shemesh personally.

*See Reidl Supplemental Declaration, supra,* at ¶ 6.

Turning back to Lone Wolf's motion for jurisdictional discovery, the Court granted that motion and allowed discovery into the following three areas:

> (1) Whether BravoTac is an alter ego of Bravoware and/or Sopcom, (2) How Shemesh [the owner of Defendants] interacted with BravoTac, Bravoware and Sopcom, and (3) The details of Shemesh's relationship with Lone Wolf.

*See Order (Dkt. No. 23)* at p. 4. As a result of defendants' denials of any connection between them and BravoTac, Lone Wolf's counsel traveled to a hotel in California to take Shemesh's deposition.

**Memorandum Decision & Order – page 4**

In the hotel lobby, just thirty minutes before the deposition was set to begin, Reidl met with Shemesh and recalls that "[n]othing he told me was inconsistent with or contradicted anything" that he had said earlier concerning the relationship between BravoTac, Bravoware, and Sopcom. *See Reidl Supplemental Declaration (Dkt. No. 48-5)* at ¶ 2.

At the deposition, the following exchange took place between Shemesh and Lone Wolf's counsel.

> Q: Have you ever filed registering a fictitious business name in L.A. County?
> A: Yes, I did.
> Q: What fictitious business name was that?
> A: BravoTac.
> Q: And who was that filed on behalf of?
> A: Bravoware.
> . . . .
> Q: Was the Bravotac eBay store used to conduct any business for Sopcom Inc.?
> A: At that time, yes.
> Q: At what time are you referring to?
> A: 2013.
> Q: Was there a point in time when it stopped conducting business for Sopcom?
> A: In 2014. Or prior, I believe. I don't really recall exactly when, but it was somewhere between 2013 and 2014.
> Q: Is BravoTac eBay store still in operation?
> A: Yes.
> Q: And who runs it?
> A: I do.
> Q: Is it run for any specific business?
> A: Just Bravoware.
> Q: How about in 2014? Was the Bravotac eBay store operational?
> A: Yes.
> Q: Who was it operated for in 2014?
> A: Bravoware.
> . . . .
> Q: And the BravoTac store on eBay that you're referring to, was that being operated under one of your other companies?

**Memorandum Decision & Order – page 5**

> A: What do you mean?  Again, the Bravoware company was the corporation, and the d/b/a was BravoTac so, you know.
> . . . .
> Q: So I just want to make sure that I have this right.  So he transferred it [BravoTac.com] to you and then you used it under Sopcom first?
> A: Yes.  Well, I never actually sold under BravoTac.com until I had Bravoware.
> Q: And then Bravoware took over BravoTac.com after that?
> A: Pretty much.  What happened is basically it would just be a Website where when you check out, it would kind of direct you through the eBay store.
> Q: Okay
> A: So that it wasn't actually like generating sales directly from the Website.  It had to go through a channel, which is eBay.
> Q: So the eBay that you're referencing here, you're referencing the BravoTac eBay store?
> A: Right.

*See Shemesh Deposition at pp. 14, 17 & 33.*  Reidl "was surprised" when Shemesh "testified [at his deposition] that Bravotac was a d/b/a of Bravoware because this contradicted the facts he had provided to me and the results of my investigation." *Id.* at ¶ 10.  Reidl "did not believe his [Shemesh's] recollection was accurate." *Id.*  But Reidl presents nothing to support this belief, and Shemesh has never retracted his deposition testimony.

About a month after this deposition, and despite Shemesh's admissions, defendants filed a second motion to dismiss arguing that neither defendant "operates a web site," and that the "web site complained of by plaintiffs [the BravoTac website] "is not owned by either defendant." *See Defense Brief (Dkt. No. 32-1)* at p. 3.  Lone Wolf was forced to file a response brief, s*ee Response Brief (Dkt. No. 35),* and also filed a motion to amend its complaint to add Shemesh as a party defendant.

**Memorandum Decision & Order – page 6**

On June 13, 2016, Lone Wolf served but did not file a motion for Rule 11 sanctions. Lone Wolf sought reimbursement for all its expenses in revealing the false representations made by defendants that they had nothing to do with BravoTac.

On June 30, 2016, defendants filed a brief that withdrew their misrepresentations. *See Defense Brief (Dkt. No. 42).* Defendants also filed a notice that they were withdrawing their renewed motion to dismiss and not opposing Lone Wolf's motion to amend. Their withdrawal states as follows:

> Accordingly, even though there is considerable doubt about the accuracy of Mr. Shemesh's deposition testimony, Defendants hereby withdraw the following paragraphs from the previously filed declarations of Mr. Shemesh:
> - Docket No. 17-2, Paragraph 8: "Neither Sopcom nor Bravoware was involved in any of the activities described in the Complaint."
> - Docket No. 17-2, Paragraph 9: "Neither Sopcom nor Bravoware owns the website www.bravotac.com mentioned in the complaint."
> - Docket No. 18-1, Paragraphs 3 and 4: "[Bravoware, Inc. and Sopcom have] no subsidiaries or divisions."
> - Defendants also withdraw the contentions in the memoranda that were based on these paragraphs, inclusive of arguments to the effect that Bravotac was unrelated to Bravoware. (Docket No. 17-1 at pp. 2, 4; Docket No. 18 at p. 5; Docket No. 20, at p. 2; Document 32-1, at p. 3.)

*Id.* at pp. 4-5.

About a week after defendants withdrew their misrepresentations, Lone Wolf filed the motion for sanctions now before the Court. The motion seeks relief under Rule 11 because the defendants' misrepresentations required Lone Wolf to incur fees and costs to prove that they were false, and the withdrawal did nothing to cure that harm. Defendants respond that they timely withdrew the representations within Rule 11's safe harbor

**Memorandum Decision & Order – page 7**

provision and thus cannot be liable for any sanctions. The Court will resolve this motion after reviewing the law governing Rule 11 motions.

## LEGAL STANDARDS

Under Rule 11(b), an attorney, by signing any pleading or motion, certifies that "to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> . . . .
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

*See Fed.R.Civ.P. 11(b)(3)&(4).* Rule 11 is intended to deter baseless filings in district court and imposes a duty of "reasonable inquiry" so that anything filed with the court is "well grounded in fact, legally tenable, and not interposed for any improper purpose." *Islamic Shura Council of Southern California v. F.B.I.,* 757 F.3d 870, 872 (9th Cir. 2014). A motion for sanctions may not be filed, however, unless there is strict compliance with Rule 11's safe harbor provision. *Id.* That provision states that any motion for sanctions must be served on the offending party at least 21 days before the motion is filed with the court. *See* Fed.R.Civ.P. 11(c)(2). The safe harbor provision further dictates that the motion may not be filed if the offending party timely "withdraw[s] or appropriately correct[s]" the challenged contention during the safe harbor period. *Id.*

**Memorandum Decision & Order – page 8**

If the Court finds a violation of Rule 11, it has the authority to make a monetary award that "should not exceed the expenses and attorney fees for the services directly and unavoidably caused by the violation of the certification requirement." *See 1993 Advisory Committee Notes.* That sanction can be imposed on "the persons – whether attorneys, law firms, or parties – who have violated the rule or who may be determined to be responsible for the violation." *Id.* The Ninth Circuit has affirmed an award of attorney fees against a party when that party was the "catalyst" behind the violations and was "well-positioned to investigate the facts supporting its claims." *Pan-Pacific and Low Ball Cable Television Co. v. Pacific Union,* 987 F.2d 594 (9th Cir. 1993), overruled on other grounds, *Margolis v. Ryan,* 140 F.3d 850 (9th Cir. 1998).

## ANALYSIS

In his Declarations, Shemesh denied that Sopcom and Bravoware were related to BravoTac. But in his deposition, he admitted that (1) BravoTac conducted business for Sopcom in 2013, (2) he is currently running BravoTac on behalf of Bravoware, and (3) Bravoware is doing business as BravoTac.

Reidl claims that Shemesh might be mistaken, but Reidl has never presented any evidence to support that claim, and Shemesh himself has never retracted his deposition testimony or even explained the blatant contradiction between his Declaration and his deposition. The only conclusion that can be drawn from this record is that Shemesh lied in his Declarations. His lies are attributed to Bravoware and Sopcom because he was

speaking on their behalf as their owner. To uncover the truth, Lone Wolf was forced to expend substantial time and effort in discovery.

Reidl seeks to excuse himself because he was misled by his client, and because his own investigation appeared to confirm the truth of what Shemesh was telling him. The record supports Reidl's claim that he was misled by Shemesh up to a point. Reidl conducted his own investigation that seemed to confirm what Shemesh was telling him. But after the deposition on April 21, 2016, Reidl knew that the claims of no connection had no evidentiary support and yet he nevertheless filed the renewed motion to dismiss on May 19, 2016, advancing yet again Shemesh's lies that neither defendant "operates a web site" and that "the BravoTac website is not owned by either defendant." Rule 11 prohibits "reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." *See 1993 Advisory Committee Notes.*

Reidl's filing of the renewed motion to dismiss violated Rule 11(b)(3) by making factual contentions without any evidentiary support. Prior to that, the Court finds that Reidl was misled by Shemesh. "[S]anctions should fall on the client rather than on counsel when the attorney has relied reasonably on the client's misrepresentations." *See 5A Wright & Miller, Federal Practice and Procedure,* § 1336.2 at p. 663 (3d ed. 2004). Thus, Reidl is subject to sanctions only for the filing of the renewed motion to dismiss on May 19, 2016.

**Memorandum Decision & Order – page 10**

Rule 11(c)(1) also imposes sanctions on the party that is "responsible for the violation." Because Shemesh's lies are attributed to Sopcom and Bravoware, sanctions must also be imposed on these two defendants.

Reidl argues that because he withdrew the misrepresentations during Rule 11's safe harbor period, no sanctions can be awarded. But that argument misconstrues the purpose of the safe harbor. The immunity conferred during the safe harbor applies only if "the violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention . . . ." *See 1993 Advisory Committee Notes*. In other words, correction is the key – withdrawal is just one example of conduct that may, in some cases, completely correct the harm done. There is nothing magical about withdrawing allegations if the withdrawal does nothing to correct the harm. The conferral of immunity depends on correction.

Reidl's withdrawal did nothing to correct the harm here. Only an award of attorney fees can correct that harm.

As an independent ground for sanctions against Reidl, the Court relies on 28 U.S.C. § 1927. This statute states that an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To award fees under § 1927, the court must find that an attorney acted "recklessly or in bad faith." *U.S. v. Blodgett,* 709 F.2d 608, 610 (9th Cir.1983). The Ninth Circuit has made clear that "recklessness suffices for § 1927." *Fink v. Gomez*, 239

**Memorandum Decision & Order – page 11**

F.3d 989, 993–94 (9th Cir.2001).  Indeed, "a finding that an attorney recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927."  *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir.2010).  Reidl recklessly raised a frivolous argument when he filed his renewed motion to dismiss advancing Shemesh's lies.  This multiplied the proceedings because Lone Wolf was forced to file a response.  The sanctions for attorney fees against Reidl thus have an independent basis in § 1927.

As an independent ground for sanctions against Bravoware and Sopcom, the Court relies on its inherent power to levy sanctions, including attorney fees, when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons."  *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980).  While the Court's inherent power extends to all litigation abuses, the litigant must have "engaged in bad faith or willful disobedience of a court's order."  *Chambers v. NASCO, Inc*., 501 U.S. 32, 46-47 (1991).  Here, Shemesh lied in two Declarations forcing Lone Wolf to expend time and effort in discovery to uncover the truth.  Shemesh therefore acted in bad faith, and that bad faith is attributed to Bravoware and Sopcom because he is their owner and lied on their behalf.

## CONCLUSION

The Court will grant Lone Wolf's motion for sanctions.[1] The Court will award sanctions against Reidl for violating Rule 11(b)(3) and 28 U.S.C. § 1927, requiring payment to Lone Wolf of the attorney fees and costs it incurred in responding to the renewed motion to dismiss filed on May 19, 2016.

The Court will also award sanctions against defendants Bravoware and Sopcom pursuant to its inherent power, and under Rule 11(c)(1) because these defendants were responsible for violating Rule 11(b)(3), requiring payment to Lone Wolf of the attorney fees and costs it incurred for the following:

1. Responding to the first motion to dismiss (docket no. 17);
2. Filing the motion to conduct discovery regarding BravoTac (docket nos. 14, 16, & 21)
3. Responding to the renewed motion to dismiss (docket no. 32)
4. Traveling and taking the deposition of Shemesh.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for sanctions (docket no. 43) is GRANTED. Sanctions are imposed on attorney Paul Reidl and on defendants Bravoware and Sopcom as set forth in the body of the Memorandum Decision.

---

[1] The Court can find no basis to award sanctions against local counsel.

**Memorandum Decision & Order – page 13**

IT IS FURTHER ORDERED, that the plaintiff shall submit a petition for fees and costs consistent with this decision within twenty days from the date of this decision.

DATED: March 3, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision & Order – page 14**